Syllabus.

## Wytheville.

### JOHN HENDERSON V. COMMONWEALTH.

June 16, 1921.

1. DRUGS—*Cocaine—Evidence Insufficient to Support Conviction.*—
   Officers searching accused's house for ardent spirits found con-
   cealed in a blanket hanging in the dining room a match box
   containing fifty papers of cocaine, put up in packages, "in the
   usual way that cocaine sellers fix it." Accused testified that
   he knew nothing of the cocaine, but that his wife confessed to
   him later that it belonged to her, and accused's testimony was
   fully confirmed by his wife who also said that she had placed
   it in the blanket because she did not want her husband to find
   out that she had resumed the use of it.

   *Held/* That the evidence was insufficient to sustain a conviction
   of unlawful possession of the cocaine with intent to sell.

2. DRUGS—*Prosecution for Possession of Cocaine with Intent to
   Sell—Evidence of Financial Standing of Accused.*—In a pro-
   secution for possession of cocaine with intent to sell, it ap-
   peared that although accused had not recently been at work,
   he owned several houses and appeared to have a considerable
   sum of money. The inference sought to be drawn from these
   facts by the Commonwealth was that his property had been ac-
   quired by traffic in cocaine.

   *Held:* That this inference was wholly unwarranted, even if the
   facts stood unexplained, but as a matter of fact accused tes-
   tified that for more than ten years and until a few years prior
   to the trial he had been a peddler of fish and vegetables, and
   no evidence was offered to contradict his statements in this
   regard.

3. DRUGS—*Possession—Constructive Possession—Code of 1919, Sec-
   tion 1697.*—Under section 1697, Code of 1919, which makes
   possession of cocaine, with certain exceptions, *prima facie* evi-
   dence of an intent to sell, etc., constructive possession by ac-
   cused is not sufficient evidence of the intent to sell.

4. CRIMINAL LAW—*Evidence—Presumption From Possession of Pro-
   perty or Instruments of Crime—Constructive Possession.*—To
   raise a presumption of guilt from the possession of the fruits

96

of or the instruments of crime by the prisoner, it is necessary that they be found in his *exclusive possession.* A constructive possession, like constructive notice or knowledge, though sufficient to create a civil liability, is not sufficient to hold the prisoner to a criminal charge. He can only be required to account for the possession of things which he actually and knowingly possessed, as, for example, where they are found upon his person, or in his private apartment, or in a place of which he kept the key. If they are found upon premises owned or occupied as well by others as himself, or in a place to which others had equal facility and right of access, there seems no good reason why he, rather than they, should be charged upon this evidence alone.

5. CRIMINAL LAW—*New Trial—Verdict Contrary to the Evidence.*—A conviction cannot be sustained which depends upon a mere guess, or at least upon the arbitrary adoption of an interpretation of the evidence which incriminates the accused, when the evidence is equally consistent with his innocence.

6. DRUGS—*Possession of Cocaine—Evidence.*—In a prosecution for possession of cocaine with intent to sell, there was no error in admitting the evidence of one of the officers who made the arrest, that the cocaine was "put up in packages in the usual way in which cocaine sellers fixed it."

7. DRUGS—*Possession of Cocaine—Evidence.*—In a prosecution for possession of cocaine with intent to sell, after accused had testified that he knew nothing about the cocaine in question, but had learned about it since his arrest, and after his wife had testified that it belonged to her and that she attempted to conceal it from her husband, one of the officers who arrested accused was allowed to testify in rebuttal that he had never heard until at the trial of any such story or claim in regard to the wife's use of cocaine.

*Held:* That, while this testimony of the officer, perhaps, had very little weight or importance, it should have been excluded.

8. APPEAL AND ERROR—*Judgment by Appellate Court—New Trial—Criminal Cases.*—Section 6251 of the Code of 1919, with reference to the order to be entered by a trial court upon setting aside a verdict, and section 6365, in reference to the order of reversal to be entered in the Supreme Court of Appeals, do not apply to criminal cases. As to such cases the practice remains unchanged and is controlled by section 4937 of the Code of 1919, which is identical with section 4058 of the Code of 1904.

Error to a judgment of the Hustings Court of the city of Richmond.

*Reversed.*

The opinion states the case.

*L. O. Wendenburg,* for the plaintiff in error.

*John R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General,* and *Leon M. Bazile, Second Assistant Attorney General,* for the Commonwealth.

KELLY, P., delivered the opinion of the court.

John Henderson was tried upon an indictment containing two counts, the first charging that he unlawfully and feloniously had in his possession cocaine and other similar drugs, with intent to unlawfully and feloniously sell and otherwise dispose of them, and the second charging that he had unlawfully and feloniously sold and otherwise disposed of such preparations. The jury rendered a general verdict of guilty, and fixed his punishment at two years in the penitentiary. Henderson moved the court to set aside the verdict, on the ground that it was contrary to the law and the evidence, and the further ground of misdirection to the jury upon the law of the case; but the court overruled the motion and passed sentence upon him accordingly. Thereupon he obtained this writ of error.

There is no evidence whatever tending to show any sales by Henderson of any of the drugs mentioned in the indictment. The following, in substance, is the evidence upon which the Commonwealth sought to establish his guilty possession: Certain police officers, armed with a warrant authorizing them to search Henderson's house for ardent spirits, went there between eight and nine o'clock at night, found him alone, and in the course of a search of the premises, which failed to disclose the presence of any ardent spirits, found in the table drawer in the dining room a small bottle containing some opium tablets (not mentioned in the indictment and not involved in this prosecution),

and, concealed in the folds of a blanket which hung on a clothes line in that room, a match box containing fifty papers of cocaine, put up in packages, "in the usual way that cocaine sellers fix it." Henderson told the officers that he knew nothing about it. They arrested him, and he then gathered up from various hiding places in the room a considerable amount of money, which, as the officers afterwards testified, he said amounted to some eight or ten thousand dollars, and which he placed in a box and took to the station house with him.

The foregoing is substantially all of the Commonwealth's evidence in chief.

Henderson testified in his own behalf, and the substance of his testimony on direct examination was this. That the, officers said they were looking for whiskey; that until they found the cocaine he did not know it was there, and did not then know whose it was, but that his wife confessed to him latter that it belonged to her; that she was pregnant and was taking the cocaine as a relief against certain effects of that condition; that she made a similar use of cocaine when pregnant on previous occasions, but that he had "partly broken her from it and didn't know she was using it again until here recently."

On cross-examination Henderson stated that he owned three or four houses, had some money, but had never seen as much as ten thousand dollars at one time in his life, and had only $133 in one dollar bills in his possession the night of his arrest; that his family consisted of his wife and three children; that the children were his, but he had only married their mother about a year prior to the time of the trial; that his wife worked at the Jefferson hotel laundry in the daytime; that she left the children with her mother while she was at work and brought them home at night; that his wife when using cocaine would take as much as four or five packages two or three times a day; that he him-

self had not been working much for some time because unable to do so (having tuberculosis, as he explained on redirect examination), but that he was able to support his wife and tried to keep her from working out, but she did it from choice.

Henderson was fully corroborated by the testimony of his wife as to the ownership of the cocaine and the purpose for which she was using it. She said that she had concealed the cocaine in the folds of the blanket because she did not want her husband to find out she had resumed the use of it. She also explained that she bought the cocaine from a man named "Slim"—she could give no other name—who said he lived in New York, and whom she had known ever since her first child was born. She did not say so expressly, but the clear inference from her testimony was that she meant to say that she had known "Slim" through former purchases from him.

[1] 1. We shall first consider the assignment of error which challenges the action of the court in refusing to set aside the verdict of the jury on the ground that it was contrary to the evidence. The motion, in our opinion, should have been sustained. The most that can be said of the evidence as tending to support the conviction, if even this much can be said, is that it raises a slight suspicion of guilt. The testimony of Henderson, as well as that of his wife, appears to be straightforward, and the account they give as to the possession and ownership of the cocaine is neither unreasonable nor improbable. Nothing that the Commonwealth's witnesses testified to was in serious conflict with or materially discredited the evidence given by Henderson and his wife.

[2] Some importance seems to have been attached by the Commonwealth to the fact that although the accused had not recently been at work, he owned several houses and appeared to have a considerable sum of money. The inference

apparently sought to be drawn from these facts is that his property had been acquired by traffic in cocaine. This inference is wholly unwarranted, even if the facts last recited stood unexplained, but as a matter of fact he testified that his health had recently failed, but that for ten years or more and until about the year 1916 he had run a peddling wagon in Richmond, as a peddler of fish and vegetables, and that the public records would show that he had been licensed as such. No evidence whatever was offered to contradict these statements on his part, and surely they are not seriously impeached merely by the proof we have here of a lone instance in which cocaine was found in his house under the circumstances and explanations above set forth.

[3] No reference is made, either in the oral argument or in the brief for the Commonwealth to the provision of the statute (Code, 1919, sec. 1697), which makes possession of cocaine (with certain exceptions not material here) *prima facie* evidence of an intent to sell, give away, or otherwise dispense the same. The failure to invoke this provision was doubtless intentional, because manifestly it cannot materially aid the prosecution. The cocaine was found in Henderson's house, and was thus constructively in his possession, but that alone does not satisfy the intendment of the statute. The word "possession" as used therein, must be understood to mean the same thing as in the law with respect to larceny, making possession of recently stolen goods *prima facie* evidence of guilt.

[4] In 3 Greenleaf's Evidence, sec. 33, the author says: "But to raise the presumption of guilt from the possession of the fruits of (or) the instruments of crime by the prisoner, it is necessary that they be found in his *exclusive possession*. A constructive possession, like constructive notice or knowledge, though sufficient to create a civil liability, is not sufficient to hold the prisoner to a criminal charge. He can only be required to account for the possession of things

which he actually and knowingly possessed, as, for example, where they are found upon his person, or in his private apartment, or in a place of which he kept the key. If they are found upon premises owned or occupied as well by others as himself, or in a place to which others had equal facility and right of access, there seems no good reason why he, rather than they, should be charged upon this evidence alone."

This is the settled rule in Virginia, the latest case on the subject being *Tyler* v. *Commonwealth,* 120 Va. 868, 871, 91 S. E. 171. In this case, Henderson's wife had equal access to the room, and in addition thereto, by testimony which is consistent and uncontradicted, it appears that his wife placed the cocaine in the blanket with the express purpose of concealing it from him.

[5] The conviction of the accused depends upon a mere guess, or at least upon the arbitrary adoption of an interpretation of the evidence which incriminates the accused, when the evidence is equally consistent with his innocence. Such a conviction cannot be sustained. *Canter* v. *Commonwealth,* 123 Va. 794, 804, 96 S. E. 284; *Scruggs* v. *Commonwealth,* 125 Va. 736, 743, 99 S. E. 518; *Karnes* v. *Commonwealth,* 125 Va. 758, 770, 99 S. E. 562, 4 A. L. R. 1509.

2. The assignment of error based upon alleged misdirection to the jury does not appear to be very seriously relied upon, is without substantial merit, and calls for no discussion.

[6] 3. The witness Ford, one of the officers who made the arrest, was allowed to testify over the objection of the accused, that the cocaine was "put up in packages in the usual way in which cocaine sellers fixed it." There was no error in admitting this proof as one of the circumstances attending the alleged crime. It was practically valueless to the Commonwealth, however, because it was entirely consistent with the innocence of the accused, his wife having expressly stated that she bought the cocaine from a dealer.

[7] 4. The remaining assignment of error may be disposed of thus: After the accused had testified that he knew nothing about the cocaine in question, but had learned about it since his arrest, and after his wife had testified that it belonged to her and that she had attempted to conceal it from her husband, the witness Ford was allowed to testify in rebuttal that he had never heard until at the trial of any such story or claim in regard to the wife's use of cocaine. This evidence was admitted over the objection of the accused. We can think of no principle upon which it was admissible. If the witness did not even know that Henderson was married, he certainly was in no position to contradict, even in this indirect manner, the claim that he wife was addicted to the use of a drug. The evidence, perhaps, had very little weight or importance, but it should have been excluded.

[8] Finally, we are asked to enter a final judgment in this court in favor of the defendant. This we cannot do. Section 6251 of the Code of 1919, with reference to the order to be entered by a trial court upon setting aside a verdict, and section 6365, in reference to the order of reversal to be entered in this court, do not apply to criminal cases. As to such cases the practice remains unchanged and is controlled by section 4937 of the Code of 1919, which is identical with section 4058 of the Code of 1904.

For the foregoing reasons, the judgment complained of will be reversed, the verdict of the jury set aside, and the cause remanded to the hustings court for a new trial to be had, if the Commonwealth shall be so advised, in conformity with the views herein expressed.

*Reversed.*