# Richmond

## Ralph N. Boykins v. Commonwealth of Virginia.

December 1, 1969.

Record No. 7001.

Present, All the Justices.

*Reid M. Spencer (Wolcott, Redfern, Spencer & Rivers,* on brief), for plaintiff in error.

*W. Luke Witt, Assistant Attorney General (Robert Y. Button, Attorney General; Reno S. Harp, III, Assistant Attorney General,* on brief), for defendant in error.

I'ANSON, J., delivered the opinion of the court.

Ralph N. Boykins, defendant, was tried by a jury on an indictment charging him with the murder of Junius P. Fulton, Jr. He was found guilty of voluntary manslaughter and his punishment fixed at five years in the State penitentiary. Sentence was pronounced in accordance with the jury's verdict, and the defendant is here on a writ of error to the judgment.

Defendant contends that the trial court erred (1) in holding that the evidence was sufficient to support his conviction; (2) in permitting evidence of deceased's character; (3) in granting instruction No. 4; and (4) in not restraining the Commonwealth's attorney from arguing facts not in evidence.

The evidence shows that the defendant and Fulton were partners in a used-car business operating under the name of Auto City, Inc., located on Granby Street between 24th and 25th Streets in the city of Norfolk, Virginia. Business had not been going well, and defendant had expressed his belief that his partner, Fulton, was stealing from the company. He stated to several employees that he would pay $1000 for someone to kill Fulton, but no one had taken him seriously enough to mention this to Fulton. Sometime thereafter, on October 18, 1967, Fulton was found shot to death in his office.

At 7:30 in the morning of October 18th, W. W. Strickland noticed as he passed Auto City that a burgundy Ford was parked on Granby Street near the company office. At 7:40 a.m., R. Triplett, who worked nearby, noticed a 1967 burgundy Ford with a dealer's license tag parked partly across the sidewalk close to the office. He also recalled hearing two loud reports as he approached Auto City, which he assumed to be the backfire of a passing bus. He remarked that he had never before seen a car parked by the office that early in the morning. When Triplett walked past Auto City again between 8:15 and 8:20 a.m. he noticed that the burgundy Ford he had seen earlier was gone. Between 8:15 and 8:30 a.m., Leon Smith, an employee of

Auto City, who was near the intersection of Church and 25th Streets, which is about three blocks from Auto City, recognized the defendant driving a 1967 burgundy Ford with dealer's license plate No. UD 31576, headed east, away from his place of business. The car was traveling at approximately 35 miles per hour, ten miles over the speed limit, and it did not halt for a stop sign at the intersection.

At 8:40 a.m., Nat Turner, another employee of Auto City, unlocked the building and discovered Fulton dead in his office; his body was still warm. His pistol, which he always carried with him, was on the floor and it had not been fired. There was no evidence of a forced break-in.

Dr. Karnitschnig, deputy chief State medical examiner, testified that Fulton's death was caused by two gunshot wounds in his head. He identified the bullets as .32 caliber lead, and said they were fired at close range, probably 6 to 12 inches away from decedent's head. The weapon was never found, nor was it shown whether a pistol or rifle was used.

Police Sergeant Hurst testified that at 11:30 on the morning of the offense he arrived at Lake Smith, about twenty minutes away by car from Auto City, where a 1967 maroon Ford had been found earlier. When the car was later pulled out of the lake a clip-on dealer's license tag bearing the number UD 31576 was found under some mud in the trunk of the car. Hurst further said that he searched defendant's home in Virginia Beach and found five .32 caliber cartridges, four steel-jacketed and one lead. He also found two guns, but neither was of .32 caliber.

The defendant neither testified nor called any witnesses in his behalf.

Defendant contends that the Commonwealth's evidence is wholly circumstantial and it is insufficient to support his conviction.

■ When the sufficiency of evidence is challenged after a conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. We should affirm the judgment "unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8-491; *Allison* v. *Commonwealth*, 207 Va. 810, 811, 153 S.E.2d 201, 203 (1967); *Wright* v. *Commonwealth*, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954).

We have many times dealt with the character and sufficiency of circumstantial evidence to support a conviction. In the recent case of

*Braxton* v. *Commonwealth*, 209 Va. 750, 752, 167 S.E.2d 120, 121, 122 (1969), we quoted from *La Prade* v. *Commonwealth*, 191 Va. 410, 418, 61 S.E.2d 313, 316 (1950), as follows:

> " '[I]f the proof relied upon by the Commonwealth is wholly circumstantial, as it here is, then to establish guilt beyond a reasonable doubt all necessary circumstances proved must be consistent with guilt and inconsistent with innocence. They must overcome the presumption of innocence and exclude all reasonable conclusions inconsistent with that of guilt. To accomplish that, the chain of necessary circumstances must be unbroken and the evidence as a whole must satisfy the guarded judgment that both the corpus delicti and the criminal agency of the accused have been proved to the exclusion of any other rational hypothesis and to a moral certainty. Yet what inferences are to be drawn from proved facts is within the province of the jury and not the court so long as the inferences are reasonable and justified.' "

The burden is upon the Commonwealth to prove beyond a reasonable doubt that motive, time, place, means and conduct concur in pointing out the accused as the perpetrator of the crime. *Dean* v. *Commonwealth*, 73 Va. (32 Gratt.) 912, 926 (1897); *Abdell* v. *Commonwealth*, 173 Va. 458, 470, 2 S.E.2d 293, 298 (1939).

There can be no doubt from the evidence that Fulton met his death through a criminal agency. Hence the remaining question is whether the evidence is sufficient to prove that the defendant was the perpetrator of the crime.

We think the evidence is sufficient to support the conviction. Defendant believed that Fulton was stealing the company's funds, and he more than once had offered to pay someone to kill him. It appears that the perpetrator of the crime had a key to the office because there was no evidence of a break-in. A burgundy Ford with a dealer's license tag was seen parked close to the Auto City office at 7:40 on the morning the offense was committed. The witness who saw the car at that time also heard two loud reports as he walked by the place of business. When he again walked by Auto City between 8:15 and 8:20 a.m., the car he had seen earlier was not there. Between 8:15 and 8:30 a.m., the defendant was seen by one of his employees about three blocks from Auto City, headed away from his place of business. The automobile that defendant was driving answered the description of

the one sighted earlier at the scene of the crime. The car had a dealer's license tag on it, No. UD 31576, and it was traveling at an excessive speed. At the speed the car was moving, it could be concluded that the time required for it to travel from Auto City to the point where it was seen by the witness was only a matter of seconds. This same car was found sometime later that morning in Lake Smith, about twenty minutes away from Auto City, and the dealer's license tag, UD 31576, was found in the trunk of the car. The bullets that caused Fulton's death were of .32 caliber, and upon a search of defendant's home the same caliber bullets were found. When the deceased's body was found at 8:40 a.m. it was still warm, indicating that Fulton was shot only a short time before that. From these facts and the unbroken chain of circumstances the jury could conclude that the Commonwealth had met its burden of proving beyond a reasonable doubt that motive, time, place, means and conduct had concurred in pointing to the defendant as the perpetrator of the crime. The evidence established was consistent with defendant's guilt and inconsistent with his innocence.

█ Defendant next contends that it was prejudicial error to admit into evidence a permit issued to Fulton to carry a concealed weapon, as it was evidence of his good character.

A police officer was permitted to read to the jury only the legend, "Permit to carry a concealed weapon in the State of Virginia." The permit was admitted in evidence but later withdrawn and the jury was instructed to disregard it before its significance was explored. The action of the court eliminated any possible prejudice to the defendant. A conviction should not be reversed unless the introduction of improper evidence suggests a manifest probability that it was prejudicial to the defendant. *Coffey v. Commonwealth*, 188 Va. 629, 636, 51 S.E.2d 215, 218 (1949).

█ Defendant contends that instruction No. 4, dealing with the question of flight, was erroneous because it did not contain the words "if proven" and the jury could conclude that the trial judge was telling them that the defendant did flee from the crime.

The instruction told the jury that the flight of a person after the commission of a crime may be considered by the jury along with other evidence as tending to show guilt of the accused, and should be given such weight as they deemed proper in connection with other pertinent and material facts and circumstances.

In *Carson v. Commonwealth*, 188 Va. 398, 409, 49 S.E.2d 704,

709 (1948), relied on by the defendant, this court did use the words "if proven" in stating what was a proper instruction relating to flight after the commission of a crime. But we did not hold that an instruction on flight must include the words "if proven."

The instruction does not indicate to the jury that the court was telling them that the defendant did flee from the scene of the crime. It merely told the jury that flight could be considered along with all the other evidence in the case. Concededly, it would have been proper for the trial court to have amended the instruction by inserting the language "if proven" after the word "crime" but its failure to do so is not reversible error.

■ Lastly, defendant contends that it was prejudicial error for the trial court not to have instructed the Commonwealth's attorney during summation to refrain from arguing facts not in evidence and refusing to instruct the jury to disregard the statement that the defendant "ditched the car."

The record shows that the court sustained defendant's objection by admonishing the Commonwealth's attorney to argue only matters in the evidence. The Commonwealth's attorney obeyed the ruling of the court and did not again refer to the statement. We think the action of the court was sufficient. The jury had heard the evidence, and they were the judges of what evidence had been introduced. Moreover, counsel did not ask for a mistrial. See, *Funk* v. *Commonwealth*, 163 Va. 1014, 1017, 175 S.E. 861, 862 (1934).

For the reasons stated, the judgment of conviction is

*Affirmed.*