BENTON, Judge,
dissenting.
In Burton v. Commonwealth, 215 Va. 711, 213 S.E.2d 757 (1975), the police were alerted by an informer that illegal drugs would be delivered to a jail inmate. When the accused brought a bag of clothing to the inmate, the officers searched the bag and located the drugs. In reversing the conviction of the accused for distribution of drugs, the Supreme Court reiterated the following legal standard for proof of possession:
Although the Commonwealth established that the defendant was in possession of the drugs, it was not established beyond a reasonable doubt that she was knowingly and intentionally in possession. In Buono v. Commonwealth, 213 Va. 475, 476, 193 S.E.2d 798, 799 (1973), we held:
*565 “To establish ‘possession’ in a legal sense it is not sufficient to simply show actual or constructive possession of the drug by the defendant. The Commonwealth must also establish that the defendant intentionally and consciously possessed it with knowledge of its nature and character.”
The evidence does not exclude all reasonable conclusions inconsistent with that of defendant’s guilt. It does not overcome the presumption of innocence to which she is entitled.
Burton, 215 Va. at 713, 213 S.E.2d at 758-59 (citation omitted). The evidence in this case is equally deficient.
Distilled to its basic elements, the evidence in this case proved Quinton Lazan* Hunley and Celestine Viola Yancy deboarded the train from New York at the Amtrak train station in Henrico County. The police officers who were at the station were unable to identify the luggage each was carrying as they deboarded the train because the crowd obstructed the officers’ view below the waist. As Hunley and Yancy walked along the loading platform and through the terminal, each appeared to be carrying luggage. They had three pieces of luggage, which were described as a large leather “purse or satchel-type bag,” a “brown and gold tote-type bag” and a red, white and blue cloth or fabric textured bag. At various times as they walked along the loading platform, Yancy carried both the brown leather purse and the red, white and blue luggage.
Several police officers approached them in the middle of the parking lot. Hunley then was carrying the brown and gold luggage as well as the red, white and blue luggage. Although the officers had previously seen Yancy carrying the red, white and blue luggage, she then was carrying only the leather purse. Officer Irwin told them the officers were working to prevent the flow of illegal drugs and firearms into the Richmond area, told them they were not under arrest, and asked if they were willing to answer some questions. They said, “yes”; however, Yancy became “visibly, very visibly afraid or scared *566 at that point. She was trembling. Her speech was ... very low and somewhat stumbling.”
Hunley produced a Virginia driver’s license, and Yancy produced a college identification card. Officer Irwin testified that when he asked, “if these [are] ya’ll’s bags,” Hunley responded, “they’re our bags.” Officer Irwin admitted, however, that it was not until the morning of the preliminary hearing in the general district court that he wrote on the back of his sheet of typewritten notes the reference attributing to Hunley the statement, “they’re our bags.” The notes he made immediately after the encounter do not contain this reference. No other person attributed that statement to Hunley.
Officer Irwin then requested consent to search the contents of the luggage. He did not ask either Yancy or Hunley to identify which luggage belonged to whom. Yancy protested that she did not understand why she and Hunley had been singled out, and said she felt her rights were being violated. Yancy then said, “Well, I really don’t want you going through my bags, but I will show you what’s in the bags.” Hunley made no statements concerning the search of the luggage. Yancy then opened the red, white and blue luggage that she and Hunley both had carried and began to move around the contents. Officer McLean testified that he observed children’s shoeboxes and shoes.
Officer McLean told Yancy he would prefer to search the bag himself and indicated a concern for the officers’ safety. In response to Hunley’s comment that he felt embarrassed being detained in the middle of the parking lot, Officer Irwin said, “would you mind stepping over behind this truck.” Yancy then closed the red, white and blue luggage. Hunley moved the red, white and blue luggage and the brown and gold luggage to the area behind the truck. Yancy carried the leather purse.
After they moved from the middle of the parking lot, Officer Irwin repeated his request for consent to search the luggage. Yancy responded, “yes-.” Hunley said,- “go for it, you’re just doing, your job.” Officer Irwin unzipped the brown and gold *567 luggage, extended his hand under a blanket inside the luggage, and removed a sealed, knotted, opaque, dark-brown plastic bag. Officer Irwin testified that when he requested permission to untie the knot, Hunley again replied, “You are just doing your job, go ahead.” Officer Irwin removed two rectangular-shaped objects completely wrapped in opaque, gray-colored tape that he believed to be packaging consistent with narcotics. Officer Irwin said that when he lifted the two wrapped, rectangular-shaped objects, Hunley sighed deeply and shook his head.
The officers then handcuffed Hunley and Yancy and took them to an office in the train station. Inside the office, Officer McLean “field tested” the substance in one of the rectangular-shaped objects. After the test indicated the substance was cocaine, the officers arrested Hunley and Yancy for possession of the cocaine. Yancy then said, “It’s mine.” Hunley said nothing. At no time did Hunley verbally or by conduct acknowledge possession or awareness of the concealed and carefully packaged cocaine.
After Yancy made her admission, the officers searched the red, white and blue luggage. In a child’s shoebox, the officers found a third rectangular-shaped object of similar size and packaging to the two objects recovered from the brown and gold luggage. Later, when searching Hanley’s person, the officers recovered a pair of train ticket stubs, a digital pager, and $33.70 in U.S. currency. The officers recovered from Yancy’s person a cellular telephone and $44 in U.S. currency. In Yancy’s leather purse, the officers recovered a “Signet Bank” bag containing $2,000 in currency and various small sheets of paper with names and dollar figures written beside them.
The evidence proved that Hunley had no illegal drugs on his person. As in Burton, mere proof that Hunley had a bag of clothing containing an illegal drug is insufficient to prove that he “‘intentionally and consciously possessed [the enclosed opaque packages of drugs] with knowledge of its nature and *568 character.’ ” 215 Va. at 713, 213 S.E.2d at 759 (citation omitted).
[W]ell established principles apply to testing the sufficiency of circumstantial evidence. In LaPrade v. Commonwealth, 191 Va. 410, 418, 61 S.E.2d 313, 316 (1950), [the Supreme Court] summarized those principles as follows:
“... [I]f the proof relied upon by the Commonwealth is wholly circumstantial, as it here is, then to establish guilt beyond a reasonable doubt all necessary circumstances proved must be consistent with guilt and inconsistent with innocence. They must overcome the presumption of innocence and exclude all reasonable conclusions inconsistent with that of guilt. To accomplish that, the chain of necessary circumstances must be unbroken and the evidence as a whole must satisfy the guarded judgment that both the corpus delicti and the criminal agency of the accused have been proved to the exclusion of any other rational hypothesis and to a moral certainty----”
But, circumstances of suspicion, no matter how grave or strong, are not proof of guilt sufficient to support a verdict of guilty. The actual commission of the crime by the accused must be shown by evidence beyond a reasonable doubt to sustain his conviction.
Clodfelter v. Commonwealth, 218 Va. 619, 623, 238 S.E.2d 820, 822 (1977).
Hunley made no statements and committed no acts that tend to prove he was aware of the presence or character of the items in the luggage. Recognizing the dearth of evidence, the Commonwealth asserts as a bald proposition that Hunley’s “deep sigh” and “shaking of the head” as his head dropped are conduct which “suggests that [Hunley] was fully aware of the nature and character of the cocaine which the [officer] had found.” The evidence undisputably proved, however, that the officers had earlier announced that they were looking for illegal drugs. Hunley’s reaction, which was not seen by the trial judge but was described by the officer’s testimony, clearly is consistent with a reaction of disbelief and dismay *569 that he unknowingly was carrying opaque wrapped packages inside the luggage.
In Behrens v. Commonwealth, 3 Va.App. 131, 137, 348 S.E.2d 430, 434 (1986), the Commonwealth argued that awareness of cocaine may be inferred from an accused’s “failure to show surprise.” We rejected that simplistic analysis. See id. The Commonwealth now seeks to resurrect that argument by pointing to a reaction, even one that shows dismay, as indicative of “aware[ness] of the nature and character of the cocaine which the [officer] had found.” The Commonwealth apparently believes any reaction will suffice to establish guilt. The notion that Hunle/s sigh and drop of his shaking head proved that he intentionally and consciously possessed the cocaine in the opaque bag inside the luggage with knowledge of its nature and character is rank speculation. “The conviction of the accused depends upon a mere guess, or at least upon the arbitrary adoption of an interpretation of the evidence which incriminates the accused, when the evidence is equally consistent with his innocence.” Henderson v. Commonwealth, 130 Va. 761, 767, 107 S.E. 700, 702 (1921). A conviction founded upon that analysis “cannot be sustained.” Id.
In upholding this conviction, the majority disregards all inferences of innocence that flow from the evidence after viewing the evidence in the light most favorable to the Commonwealth. I disagree with that analysis. In our role on appellate review, we are required to defer to the fact finder’s role in weighing the evidence. Thus, on appeal we must assume that the fact finder found most persuasive the evidence that favored the conviction. Once we defer to that role of the fact finder, by viewing the evidence in the light most favorable to the Commonwealth, we must then consider all the reasonable inferences that flow from that evidence. See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).
An inference is a conclusion which may be drawn from the evidence by a process of logic and reason. See Ryan v. Maryland Casualty Co., 173 Va. 57, 61, 3 S.E.2d 416, 418 *570 (1939); Morton v. Commonwealth, 13 Va.App. 6, 9-10, 408 S.E.2d 583, 584-85 (1991). We do not limit our consideration just to those inferences that favor guilt and disregard the inferences that favor innocence.
It is well settled in Virginia that to justify conviction of a crime, it is not sufficient to create a suspicion or probability of guilt, but the evidence must establish the guilt of an accused beyond a reasonable doubt. It must exclude every reasonable hypothesis except that of guilt. The guilt of a party is not to be inferred because the facts are consistent with his guilt, but they must be inconsistent with his innocence.
Cameron v. Commonwealth, 211 Va. 108, 110-11, 175 S.E.2d 275, 276 (1970) (citations omitted) (emphasis added).
We accept, as we must, the fact finder’s role in determining credibility and accept the resolution of credibility issues in favor of sustaining the verdict; we then must determine what reasonable inferences flow from the accepted evidence. Whether an inference may be reasonably drawn from the accepted evidence is a matter of logic and reason; it is not a matter of determining whether to believe a witness’ testimony. When we view the evidence in the light most favorable to the Commonwealth, we accept the fact finder’s determination of the believability of the witness. In judging whether an inference reasonably flows from that evidence, no rule of law or logic requires that we find an inference to be unreasonable solely because it favors a defendant’s theory of the case.
In our capacity as appellate judges, we do not abandon our obligation to scrutinize whether the evidence, so viewed, rationally supports the verdict of guilt beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Thus, we must follow the long-standing rule in Virginia that “where the evidence leaves it indefinite which of several hypotheses is true, or establishes only some finite probability in favor of one hypothesis, such evidence cannot amount to proof [beyond a reason *571 able doubt], however great the probability may be.” Massie v. Commonwealth, 140 Va. 557, 565, 125 S.E. 146, 148 (1924). Those hypotheses may flow from inferences. We are not at liberty to discard a hypothesis of innocence when it arises from an inference flowing from evidence viewed in the light most favorable to the Commonwealth.
If on appeal we accept only the inferences that favor the Commonwealth and discard all others (i.e., all reasonable inferences that favor the defendant after viewing the evidence in the light most favorable to the Commonwealth), we fail to perform our constitutional obligation to ensure that the evidence which supports a conviction rises to the standard of proof beyond a reasonable doubt. See Jackson, 443 U.S. at 318-19, 99 S.Ct. 2781. We have clearly stated that “[w]here an inference supporting guilt is no more likely to arise from a proven fact than one favoring innocence, the inference of guilt is impermissible.” Morton, 13 Va.App. at 11, 408 S.E.2d at 586. Indeed, it is well established that “where a fact which is equally susceptible of two interpretations, one of which is consistent with the interpretation of the accused, ... the [fact finder may not] arbitrarily adopt that interpretation which incriminates [the accused].” Smith v. Commonwealth, 185 Va. 800, 820, 40 S.E.2d 273, 282 (1946).
I respectfully suggest that some of the confusion on this issue derives from statements found in cases decided by our Supreme Court. In Crisman v. Commonwealth, 197 Va. 17, 18, 87 S.E.2d 796, 797 (1955), and other cases, the Supreme Court stated the standard of review as follows: “When the sufficiency of the evidence is challenged after conviction it is our duty to view it in the light most favorable to the Commonwealth, granting all reasonable inferences fairly deducible therefrom.” See also e.g. Beavers v. Commonwealth, 245 Va. 268, 281-82, 427 S.E.2d 411, 414 (1993); Cameron, 211 Va. at 110, 175 S.E.2d at 276; Allison v. Commonwealth, 207 Va. 810, 811, 153 S.E.2d 201, 202 (1967). In Higginbotham and other cases, the Supreme Court has used another variation of that standard, which states the same proposition as follows: ‘Where the sufficiency of the evidence is challenged after *572 conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom.” 216 Va. at 352, 218 S.E.2d at 537. See also Horton v. Commonwealth, 255 Va. 606, 608, 499 S.E.2d 258, 259 (1998); Boykins v. Commonwealth, 210 Va. 309, 311, 170 S.E.2d 771, 773 (1969). However, the Supreme Court has also stated the following: “[W]hen the sufficiency of the evidence is challenged on appeal, the evidence and all reasonable inferences fairly drawn therefrom must be viewed in the light most favorable to the Commonwealth.” Tuggle v. Commonwealth, 228 Va. 493, 510, 323 S.E.2d 539, 549 (1984), judgment vacated and remanded, 471 U.S. 1096, 105 S.Ct. 2315, 85 L.Ed.2d 835 (1985); Hopkins v. Commonwealth, 230 Va. 280, 294, 337 S.E.2d 264, 273 (1985); Graham v. Commonwealth, 250 Va. 79, 81, 459 S.E.2d 97, 98 (1995). In my view, a significant difference exists between this last statement and the first two statements. The last statement of the standard is not the same semantic proposition as the first and second statements.
Viewing the evidence and the inferences in the light most favorable to the prevailing party, while discarding the inferences favoring the accused that flow from evidence viewed in the light most favorable to the Commonwealth, violates well established principles. As the Supreme Court recently stated:
“ ‘It is our duty to regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom. When such evidence leads to the conclusion of guilt beyond a reasonable doubt, and excludes every reasonable hypothesis of innocence, [only then is it] sufficient to support a finding of guilt.’ ”
Tyler v. Commonwealth, 254 Va. 162, 165, 487 S.E.2d 221, 223 (1997) (citation omitted) (emphasis added). Any other method leaves appellate courts with little choice but to affirm in toto all convictions based on circumstantial evidence. We would “rubber stamp” convictions in violation of our mandate to ensure that no conviction stands unless guilt has been proved beyond a reasonable doubt.
*573 No evidence in this record “establish[ed] ‘possession’ in a legal sense [because] it is not sufficient to simply show actual or constructive possession of the drug by the defendant.” Burton, 215 Va. at 713, 213 S.E.2d at 759 (citation omitted). The majority avoids that conclusion by accepting an inference of guilt and discarding the inference of innocence that flows from Hunley’s reaction to the officers’ discovery of wrapped, taped opaque packages in the luggage he was carrying. The inference to be drawn from the proved evidence is a significant event in the chain of analysis because the evidence clearly proved that the luggage that Yancy unambiguously claimed to be her own (the red, white and blue luggage) was later found to contain a package of cocaine wrapped identically to those contained in the brown luggage. Indeed, the evidence also proved that Yancy acknowledged that the cocaine in the brown and gold luggage was hers.
I would reverse Hunley’s conviction because the proof was insufficient to establish beyond a reasonable doubt that he intentionally and consciously possessed the wrapped opaque packages in the luggage with knowledge of its nature and character. I dissent.