## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

HERMAN ROOSEVELT CAMERON v. COMMONWEALTH OF VIRGINIA.

June 15, 1970.

Record No. 7261.

Present, All the Justices.

*Joseph F. Spinella* (*Spinella and Spinella*, on brief), for plaintiff in error.

*A. R. Woodroof, Assistant Attorney General* (*Robert Y. Button, Attorney General; Gordon A. Wilkins, Special Assistant to the Attorney General*, on brief), for defendant in error.

HARMAN, J., delivered the opinion of the court.

This is an appeal from a judgment of the trial court, after a waiver of trial by jury, finding the defendant, Herman Roosevelt Cameron,

guilty of robbery by violence from the person of Mrs. Diane Marie Bishop. He was sentenced to five years in the state penitentiary with two years of this sentence suspended.

The only question before us is whether the evidence of the identity of the defendant, as one of the persons who robbed the victim, is sufficient to sustain his conviction.

The evidence discloses that on March 13, 1968, shortly after 6:00 p.m., Mrs. Bishop entered the lobby of the Sixth Street Garage, located at Sixth and Marshall Streets in Richmond, where her car was parked. After entering the lobby she walked between two Negro boys who had their backs turned toward her. As she walked toward the elevator one of the boys grabbed her in a stranglehold from behind and told the other boy to grab her purse. The second boy wrestled the purse from Mrs. Bishop's arm and, after throwing her to the floor, the two boys ran out the Sixth Street exit.

Mr. Harold Horsley, who was walking down Sixth Street toward the lobby of the garage, saw two Negro boys run from the Sixth Street exit of the building and shortly thereafter he provided the police with a description of the youths' clothing.

The description, which was broadcast over the police radio, was that the suspects were "two colored males, one short and one tall, the taller wearing dark pants, a white coat and a brown derby type hat, the smaller one wearing light pants, a brown coat and a white sailor type hat with the brim turned down."

On the basis of this description, Herman Cameron and a companion, Haywood Cook, were apprehended eight blocks from the scene of the robbery approximately 35 minutes after the robbery took place. At that time Cameron, who is taller than Cook, was wearing a "white, dirty, tan jacket," grey pants and a brownish hat. He also had a black cap in his pocket. Cook was wearing a brownish three-quarter-length coat, light tan pants and "a dirty white sailor type cap pulled down with a red and grey band around it."

The suspects were taken to police headquarters and Mr. Horsley was brought there to determine whether he could identify them. The two suspects were seated in the detective division and Mr. Horsley was asked to walk down the corridor past the point where they were seated. After doing so and viewing the two suspects he was unable to identify them as the boys he had seen running from the garage lobby. The suspects were then directed to stand up with their backs to Mr. Horsley and with their caps on. Mr. Horsley once again walked down the corridor and this time identified the

suspects by their clothing. This identification took place approximately two hours after the robbery. The suspects were not placed in a lineup nor were there any other persons in the corridor similar in size and age to Cook and the defendant.

Mr. Horsley testified that the suspects' hats were what caught his attention but he admitted that there was nothing particularly unusual about the hats. He also testified that he couldn't be positive that these were the same two boys who came out of the garage. He could only say that they were wearing the same type of clothes.

The only description Mrs. Bishop could give of the boys who robbed her was that "one boy was taller than the other, one of them had on some sort of a cap, it looked as if it might have been a sailor type cap." She testified that she did not see their facial features and that she could not identify the defendant as one of the boys who was in the garage lobby. She did state, however, that he appeared to be the same size and build as one of the two who robbed her.

Mrs. Bishop's purse contained approximately one dollar in change at the time it was stolen. At the time of their arrest, one of the boys had a quarter and one had a penny. The purse, from which the money had been removed, was found in an alley midway between the scene of the robbery and where the boys were apprehended.

Although the boys admitted being in the vicinity of the place where the robbery occurred at about the time it occurred, they denied entering the parking building. They also denied robbing Mrs. Bishop.

"When the sufficiency of the evidence is challenged after conviction it is our duty to view it in the light most favorable to the Commonwealth, granting all reasonable inferences fairly deducible therefrom. The judgment should be affirmed unless 'it appears from the evidence that such judgment is plainly wrong or without evidence to support it'. (Citations omitted)" *Crisman* v. *Commonwealth*, 197 Va. 17, 18, 87 S.E.2d 796, 797 (1955); *Jones* v. *Commonwealth*, 210 Va. 299, 302, 170 S.E.2d 779, 782 (1969); *Corbett* v. *Commonwealth*, 210 Va. 304, 306, 171 S.E.2d 251, 252-53 (1969).

It is well settled in Virginia that to justify conviction of a crime, it is not sufficient to create a suspicion or probability of guilt, but the evidence must establish the guilt of an accused beyond a reasonable doubt. It must exclude every reasonable hypothesis except that of guilt. The guilt of a party is not to be inferred because the facts are consistent with his guilt, but they must be inconsistent with

his innocence. *Wooden* v. *Commonwealth*, 117 Va. 930, 86 S.E. 305 (1915); *Cox* v. *Commonwealth*, 140 Va. 513, 125 S.E. 139 (1924); *Jones* v. *Commonwealth, supra; Corbett* v. *Commonwealth, supra.*

Applying these principles of law to the facts of the present case, we cannot say that the evidence is sufficient to sustain the conviction.

There was no witness who could identify the defendant by his facial features as one of the parties who committed the crime. Neither the victim nor Mr. Horsley saw the faces of the boys who committed the crime. The strongest evidence against the defendant was the testimony of Mr. Horsley who could only say that the defendant and his companion were "wearing the same type of clothes" as the two boys who ran out of the garage lobby and that one of the two boys was short and one was tall, as were the defendant and his companion.

Although Mr. Horsley based his entire identification of the defendant on the clothing the defendant was wearing, he was unable to recognize his clothing when he first saw him at police headquarters.

Mr. Horsley stated that the hats which defendant and his companion were wearing were what caught his attention, yet he also stated the hats were not unusual and that he had observed "quite a few like them" being worn by other persons. His description of these hats was vague and uncertain and varied from time to time. The initial description, broadcast by the police, stated that one of the hats was a brown derby and the other was a white sailor-type hat with the brim turned down. Mr. Horsley testified, however, that he thought one of them had on a blue hat and the other had on a white hat. At the time the defendant was arrested he had on a "brownish hat" but he also had a black cap in his pocket.

The only other evidence which would tend to link the defendant to the crime is his own testimony which places him in the general vicinity of the parking garage at the approximate time the offense was committed.

Considering the evidence against the defendant as a whole, while it may be said to raise a strong suspicion of guilt, it does not exclude every reasonable hypothesis except that of guilt. Therefore, it does not establish his guilt beyond a reasonable doubt and we hold that it is not sufficient to sustain his conviction.

The judgment below is reversed and the case is remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*