## Norfolk

### ADAM McCOY LASSITER

#### v.

### COMMONWEALTH OF VIRGINIA

No. 0838-91-1

Decided June 22, 1993

606

COUNSEL

Andrew R. Sebok, for appellant.

Margaret Ann B. Walker, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BAKER, J.**—Adam McCoy Lassiter (appellant) appeals from his bench trial convictions by the Circuit Court of the City of Norfolk (trial court) for two counts each of robbery and use of a firearm, and one count of malicious wounding. He argues that (1) the trial court

erroneously admitted a copy of the waiver of rights form and a copy of the statement of appellant supported only by the evidence produced at the pretrial suppression hearing on January 9, 1991; and (2) that without those documents the evidence was insufficient, as a matter of law, to support his convictions. We find that the trial court erroneously admitted the copy of appellant's statement without supporting testimony. Therefore, we reverse the conviction and remand this case to the trial court for such further action as the Commonwealth may be advised.

Upon familiar principles, we recite the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). Appellant was arrested at approximately 8:30 p.m., less than an hour after the offenses occurred. Later that same night, he signed a written statement prepared by Norfolk Police Investigator M. L. Walker. In the statement, appellant admitted his part in the robberies. Prior to trial, he filed a motion to suppress the statement, alleging that he had been coerced into executing the admission by police physical intimidation that he was unable to resist.

After conducting a pretrial evidentiary hearing on the motions, the trial court entered an order that, in relevant part, declared that ''for the reasons as stated to the record,'' the motion was denied. Those reasons are shown by the record as follows:

THE COURT: Come on down, Investigator Walker. Let me see the statement a minute, gentlemen, and the rights form. I am not going to look at the content of the statement, gentlemen.

Investigator Walker, are these words ''yes'' in here written by this defendant?

THE WITNESS: Yes, sir, they are.

THE COURT: Is this signature signed by the defendant?

THE WITNESS: Yes, sir, it is.

THE COURT: And you say top and bottom pages are signed by him?

THE WITNESS: His initials, Your Honor.

THE COURT: All right.

All right, gentlemen. I truly have not looked at the content of the statement because of any possible future involvement in this matter. I am prepared to make a decision if you want to submit it. Want to argue it?

MR. POWERS: We will submit it, Your Honor.

THE COURT: I overrule the motion to suppress, gentlemen. I resolve issues of credibility in favor of the Commonwealth. I say that even if all or part of what this defendant occurred or said occurred occurred, it doesn't establish to me that this statement is involuntary or coerced. I note by reviewing the statement that the words that he signed were very neatly printed and are identical. There is no discrepancy in deviation between those. It looks almost like a carbon copy of each other.

I also note that he has taken the time on these initials to put a period after his first name and put a little leg at the end of that "L" in each case as if he were attempting to be careful. A man in distress that he claimed he was in would not be so neat. I don't have any problem finding the statement is voluntarily given and not the product of coercion. I think the police procedure appears to be appropriate under the circumstances, and I know he doesn't think so, but these policemen have got to protect themselves and they use the Cap-Stun, and I overrule the motion and note your exception.

Walker did not testify at the trial. The prosecutor made an opening statement in which he represented to the trial court that the court "admitted . . . the statements the defendant made, as given to Investigator Buddy Walker."[1] However, the only exhibits admitted at the suppression hearing were two photographs. At the suppression hearing, the contents of the statement were not attacked by appellant or considered by the trial judge. The trial court specifically declined to review the contents, as the only issue at the suppression hearing was whether coercion by physical force had caused appellant to sign the writing prepared by Walker.

The witnesses produced at the trial testified that on a July 1990 evening, at approximately 8:00 p.m., Brent L. Gray and Erica R. Parker

---

[1] The statement was not made an exhibit or introduced into evidence at the suppression hearing, but the foregoing supports the Commonwealth's claim that it was identified as having been signed by appellant and made in Walker's presence.

were talking while standing at a bus stop in the 800 block of Park Avenue in Norfolk. Gray observed a Cadillac car slowly drive by, make a U-turn and return to the bus stop where he and Parker had been talking. One of the passengers in the car jumped out, came toward Gray, pointed a gun in his face and ordered him not to move. The gunman "snatched" jewelry from Gray, fired the gun and ran back into the car. Gray was struck by a bullet that went through his arm and lodged in his chest wall. Gray was unable to identify appellant as a person present during the robbery and assault and specifically stated that appellant was not "the one that stuck the gun in [his] face."

Parker testified that she was with Gray at the time of the robbery and shooting. She also observed the car go by and come back. She said two men got out of the car and one shot Gray and took his jewelry. The other man came up to her, demanded her jewelry and further said, "Give me this," as he "grabbed" a chain from her neck. She said the men then got into the car and drove off. She then "flagged" down police, in a patrol car, who called for an ambulance. The police "caught them a while down." She noted that she saw appellant at the scene but could not say what part he had played in the robberies and assault. Her best recollection was that appellant had grabbed her chain, but she could not say that for certain.

Norfolk Police Officer Lee Woiteshek testified that he and other police officers were in the area and heard a gunshot. He heard Parker "screaming" and saw her "pointing down the road." He observed the Cadillac go by at a high rate of speed and followed it. After it turned a corner, the officers saw it travel "in reverse," drive through a chain link fence and come to rest at a tree in a yard. They observed a man in red shirt and pants go behind the car, and a short while later as they searched the neighborhood, they observed an unlocked storage shed in which they found appellant lying on the floor. They used "Cap-Stun" to force him and another man out of the shed. The second man, wearing red clothes, had been hiding behind boxes in the shed.

The suppression hearing was conducted on January 9, 1991. As the trial on the merits of the case began on February 4, 1991, it became obvious that both the trial court and the prosecutor had mistakenly believed that appellant's statement had been admitted into evidence at the suppression hearing. The prosecutor advised the trial court that "the statement is in the Court's file." The trial court responded that it was not in the court's file. Without any further identification by

Walker that the copy was the same as that reviewed by the trial court during the suppression hearing, or that it was a copy of the statement taken by Walker, over appellant's objection a copy was admitted as an exhibit and its contents considered as evidence on behalf of the Commonwealth. As the trial court admitted the statement, it made the following comment:

> [w]e might as well state at this time, because the Court has fully heard that. All officers involved in the allegations that the defendants were presenting were subject to cross-examination by both counsel and the Court's going to admit that statement.
>
> It's my understanding that Detective Woiteshek is in bed with strep throat, and I understand that.

Defense counsel stated appellant's position concerning admission of the statement without its preparer or a witness to properly authenticate it:

> MR. POWERS: . . . It's our position that the Commonwealth should have a witness here that was in the hearing when the motion was offered and that it should not be admitted, and the Court ruled that it should be admitted into evidence. It's our position that during the trial of the matter, that that admission should be buttressed at least by a live witness.

The trial court responded:

> THE COURT: All right. Let me say this to you, gentlemen. If we had a jury trial, I might agree with you, but the Court has heard testimony concerning that statement and I simply don't think that anything would be served to have a witness here to again say, yes, this is the way it happened and the way it was admitted. I am going to allow its admission into evidence, as I ruled before, *without someone to formally say this is the statement.* . . . I am willing to go so far as to say I will consider that testimony in full that was produced at that hearing. I think that's fair.

(Emphasis added).

 "This Court must dispose of the case upon the record before it and not upon statements in the petition, or of counsel in open court, not sustained by the record." *Riddick v. Commonwealth*, 135 Va. 724,

726, 115 S.E. 523, 524 (1923). When properly authenticated by a witness who heard them, declarations made by the defendant that tend to show the defendant's guilt are admissible. *Gardner v. Commonwealth*, 195 Va. 945, 950, 81 S.E.2d 614, 617 (1954). However, "the admissibility of . . . a confession depends upon . . . whether under the circumstances [it] is trustworthy as testimony." *Owens v. Commonwealth*, 186 Va. 689, 700, 43 S.E.2d 895, 900 (1947). Hearsay evidence is "testimony which consists [of] a narration by one person of matters told [to] him by another." *Williams v. Morris*, 200 Va. 413, 417, 105 S.E.2d 829, 832 (1958). A confession, whether made orally or in writing, is hearsay evidence. A strong justification for excluding hearsay evidence is that it denies the party against whom it is admitted an opportunity to test its reliability by cross-examination of the alleged declarant. *See Evans-Smith v. Commonwealth*, 5 Va. App. 188, 197, 361 S.E.2d 436, 441 (1987).

Walker was the sole witness to the statement and it was he who reduced appellant's oral statements to writing. The Commonwealth had the burden — that could only be met by Walker's testimony — to prove the hearsay rule exception, and appellant had the right to cross-examine him concerning that exception. *See Jones v. Commonwealth*, 202 Va. 236, 242, 117 S.E.2d 67, 72 (1960). This record contains no explanation for Walker's absence from the trial. The record discloses only the trial court's reference, perhaps mistaken, that it was the court's understanding that "Detective Woiteshek is in bed with a strep throat." Nothing in the record explains Walker's failure to appear.

It is elementary that before a writing can be admitted into evidence a proper foundation must be laid to show it is relevant and material and, if classified as hearsay, that an exception to the hearsay rule permits its introduction. The writing becomes evidence only when it is authenticated. Here, not only was there no witness present who was purported to have written what appellant signed, but the original writing was not introduced and its absence was unexplained.

Because Walker was absent, appellant was denied the right to cross-examine him concerning the contents of appellant's statement. At the suppression hearing, the Commonwealth met its burden to show that the statement was voluntarily made; however, the trial court specifically foreclosed any cross-examination of its contents when it declared at the suppression hearing that it would not be read or considered. Whether appellant's statement was rendered untrustworthy by coercion was an issue decided by the trial court at the suppression hearing,

and is not an issue in this appeal. Whether the statement was lawfully obtained was one issue; the relevance, reliability, materiality and credibility of its contents are another.

■ Because the accuracy of the contents remains to be tested after the issue of coercion has been resolved, appellant must be afforded his right of confrontation granted by the Sixth Amendment to the United States Constitution, and thus, a meaningful opportunity to present a complete defense. *See Washington v. Texas*, 388 U.S. 14, 23 (1967). He must be given the opportunity to cross-examine the party who prepared the writing which was signed by appellant. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986). That opportunity would be an empty one if the Commonwealth, without producing the witness who wrote the statement that was signed by appellant, were permitted to foreclose appellant's right to cross-examine the witness concerning the contents of a writing on which the Commonwealth relies heavily to obtain a conviction. *Id.*

In *Crane*, a suppression motion to exclude a confession had been denied by the trial court. At trial, pointing to the physical and psychological environment in which the confession was obtained, the defendant attempted to show that the contents of his confession were unworthy of belief. The evidence was refused based on the Kentucky trial court's prior suppression hearing decision on the issue of voluntariness. The Supreme Court stated the issue to be decided "is whether this ruling deprived petitioner of his rights under the Sixth and Fourteenth Amendments to the Federal Constitution." *Id.* at 684. In reversing the trial court and the Kentucky Supreme Court, Justice O'Connor, speaking for a unanimous Court, said that "the Court has never questioned that 'evidence surrounding the making of a confession bears on its *credibility*' as well as its *voluntariness*." *Id.* at 688 (citation omitted) (emphasis added).

■ The Court in *Crane* further noted that "evidence about the manner in which a confession was obtained is often highly relevant to its reliability and credibility." *Id.* at 691.

Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic

elements of a fair trial largely through the several provisions of the Sixth Amendment''). We break no new ground in observing that an essential component of procedural fairness is an opportunity to be heard. That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence.

*Id.* at 690 (citations omitted).

■ Factually, *Crane* differs from the case before us, but the principle of fair opportunity to present the defense is the same. Before the testimony of a witness at a former trial is admissible, the court must be satisfied that it is impossible for the person offering the evidence to produce a live witness or to take his deposition. *Director General v. Gordon*, 134 Va. 381, 390, 114 S.E. 668, 670 (1922). *See also Burton v. Oldfield*, 195 Va. 544, 549-51, 79 S.E.2d 660, 665 (1954). No such evidence appears in the record before us.

In *Shifflett v. Commonwealth*, 218 Va. 25, 235 S.E.2d 316 (1977), the Virginia Supreme Court approved the admission at trial of the testimony of a witness given at a preliminary hearing when it was shown both that the witness had died and that complete cross-examination of the witness had been conducted by the defendant at the preliminary hearing.

■ In *Shifflett*, the Court provided the guidelines for the admission of such evidence:

The overwhelming weight of authority supports the rule that in criminal cases the preliminary hearing testimony of a witness who is absent from the subsequent trial because of death may be proved by the *oral testimony* of a person who was present at the former trial and heard the witness testify. In applying this rule, however, it must be shown: (1) that the witness is dead; (2) that the testimony of the witness was given under oath (or in such form of affirmation that is legally sufficient); (3) that the person who seeks to relate the testimony of the absent witness can state the subject matter with clarity and in detail; and (4) that the party against whom the witness was offered was present with counsel and was afforded the opportunity of cross-examination.

*Id.* at 28, 235 S.E.2d at 318-19. In reaching its conclusion in *Shifflett*, the Court emphasized that the witness died subsequent to the

preliminary hearing and Shifflett had exercised his right of full cross-examination of the witness, and thus his constitutional right to be confronted by the witness had been met. Neither of those prerequisites is present in the case before us. Although the cases uniformly hold that the accused is not denied his right of confrontation when the witness is dead or proved to be unavailable after diligent effort, this rule is not applicable unless complete and adequate cross-examination on the issue has been made. *See Pointer v. Texas*, 380 U.S. 400, 407 (1965). *See also Mancusi v. Stubbs*, 408 U.S. 204, 216 (1972).

Here, the Commonwealth's case may have turned upon the credibility of the contents of the statement. It was essential to the defense to test the circumstances under which the words were both spoken and written by the witness, whose absence was unexplained. Only when the witness' unavailability is proved, the issues and parties are the same, and complete and adequate cross-examination has been afforded on the issues, may testimony from another hearing be admitted at a subsequent trial. The trial judge frankly admitted that if this had been a jury trial he would have required Walker's presence. Notwithstanding the court's ability in a bench trial to disregard inadmissible testimony, the elements necessary to prove a case must be the same for a bench trial as for a jury trial.

Although reference was made at the suppression hearing to the manner in which the statement was initialed and signed, it was not admitted as an exhibit and its contents were never examined. Before that writing could be considered at trial, a proper foundation for its entry was required. Without Walker, the foundation could not be laid. Walker was not proved to be dead or unavailable at the time of trial, the issue at the suppression hearing and at trial were not the same, and complete cross-examination by appellant did not occur at the hearing because the issue of credibility of contents was not relevant or material to the issue then being heard. Accordingly, it was error for the trial court to consider the waiver of rights form and contents of the statement without the witness being present to identify it and undergo cross-examination as to its contents. We cannot say that the error was harmless beyond a reasonable doubt. *See* Charles E. Friend, *The Law of Evidence in Virginia* § 7 (2d ed. 1983).

Appellant also asks that we dismiss him from further prosecution because, if the contents of the statement are not considered by this Court, the evidence is not sufficient to sustain the conviction. We decline the request. First, we reverse not for insufficiency, but because it

was error to admit the waiver of rights form and the statement into evidence without Walker's testimony. Second, in viewing the record as we must, we find evidence from Parker that appellant was at the scene and stole her chain from her person. Moreover, his flight may be considered as evidence of consciousness of guilt.

For the reasons stated, we reverse and remand this case to the trial court for such further proceeding as the Commonwealth may be advised.

*Reversed and remanded.*

Koontz, J.,* and Willis, J., concurred.

---

* When the case was argued, Judge Koontz presided. Judge Moon was elected Chief Judge effective May 1, 1993.