521 S.E.2d 770

**David Darnell LOWERY**

v.

**COMMONWEALTH of Virginia.**

**Record No. 1451–98–4.**

Court of Appeals of Virginia,
Alexandria.

Dec. 7, 1999.

Thomas W. Farrington, Takoma Park, MD (Hendershot & Farrington, on brief), for appellant.

John H. McLees, Jr., Assistant Attorney General (Mark L. Earley, Attorney General; Jeffrey S. Shapiro, Assistant Attorney General, on brief), for appellee.

Present: BENTON and ANNUNZIATA, JJ., and DUFF, Senior Judge.

BENTON, Judge.

David Darnell Lowery appeals from his conviction for robbery. He contends the evidence was insufficient to prove he committed the crime. We agree, and for the reasons that follow, we reverse Lowery's conviction.

## I.

About 9:52 a.m. on February 13, 1997, two men entered the Citizens Bank in Alexandria while the bank manager and two tellers were behind the counter. One of the two men went behind the counter and told the tellers to open the cash drawers. The manager and one of the tellers both testified that one of the robbers wore dark clothing and a winter jacket with a hood over his head and that the other wore a black leather jacket and dark clothing. The manager told the police that the robber wearing the leather jacket also wore something on his head and construction-type boots. The manager and teller also testified that, because one of the robbers wore

a ski mask and the other robber also had something covering his face, they never saw either of their faces. The manager and the teller further testified that both men were black, were of slender build, and were 5'10" to 5'11" in height. On cross-examination, however, the teller admitted that because the robbers wore masks, she could not identify their race. Several months after the robbery, the police showed the teller a series of photographs. She was unable to identify any of the individuals depicted in the photographs as the robbers.

After the robber wearing the hooded jacket went behind the teller's counter, the other robber, who wore the leather jacket, approached the only customer in the bank, put his hand on the customer, and ordered everyone to the floor. The robbers took more than $3,000, placed the money in a white canvas bag that was larger than a water jug, and ran from the bank using the Cameron Street exit. A video camera inside the bank recorded the events. The videotape of the robbery and still photos made from the tape were shown and entered into evidence at trial. The videotape and the photographs reveal that the robber wearing the leather jacket had dark pants and that the other robber with the hooded jacket wore lighter pants. They also reveal that the robber wearing the hooded winter jacket was carrying the white bag.

Howard Reasoner, a witness who lived nearby, testified that he was standing across the street from the bank just before 10:00 a.m. Reasoner saw two men on the sidewalk by the bank's parking lot about thirty-five feet from the bank's exit. The men ran along Cameron Street, crossed the street, and passed within five or six feet of Reasoner. Reasoner lost sight of the men when they entered an alley. He testified that he saw them from the side and did not see their faces. The man wearing the leather jacket was 5'10" to 6' and had his hand under his jacket. Reasoner said that they were tall. Reasoner described the men he saw as being well groomed and slender black males, that one of them wore a dark leather jacket and a black knit cap, and that the other wore a hooded sweatshirt. He did not recall whether they were wearing sunglasses. Neither man was carrying a white bag. The

police later showed Reasoner "a photo spread of a number of individuals"; however, he was unable to identify any of those persons as the individuals he saw on the day of the robbery.

Robert McCullum testified that, between 10:00 and 10:05 a.m., he was sitting in his automobile in a parking lot near Cameron Street when he saw two black men running in an alley a block and a half from the bank. They stopped running and walked twenty feet to a black Mazda RX–7 automobile. He further testified that five or six minutes passed from the time he first saw the men until they drove away. He estimated they sat in the car for a minute or longer before they drove away. McCullum wrote down the license plate number and identified the license as a Virginia plate.

McCullum testified that one of the men wore a brown dull leather or suede, waist length jacket and tan khaki pants. The other man wore a hooded jacket and tan pants. He said neither individual was wearing a hat. The man wearing the brown leather or suede jacket was wearing Rayban sunglasses and "possib[ly]" had a mustache. McCullum recalled that in his initial statement to the police, he said the man wearing the brown leather or suede jacket was thirty to thirty-five years old; however, three months later he described him as being in his late twenties or early thirties. Three months after the event, McCullum identified Lowery's picture in a photographic lineup of six persons as the person he observed on February 13, 1997, wearing the brown leather or suede jacket. In December 1997, McCullum saw Lowery in a courtroom and identified him to the police.

Detective Thomas Durcan determined that the license number McCullum recorded identified a black Mazda automobile registered in Maryland to David Darnell Lowery. He found no such number registered in Virginia. Two months after the robbery, Detective Durcan saw Lowery exit the automobile carrying a dark leather jacket and seized the jacket. It was not a suede jacket.

Detective Durcan then prepared an array of photographs that included Lowery's photograph. Although McCullum

identified Lowery as the man he saw, Reasoner could not identify any persons in the photo array as the persons he saw run by him. Moreover, Detective Durcan testified that no one in the bank during the robbery was able to identify Lowery as the robber. Indeed, Detective Durcan further testified that on the day of the robbery, the customer who was in the bank during the robbery identified two other men as the perpetrators.

According to a police report written by Detective Hoffmeister, the bank customer was taken to another location in Alexandria shortly after the robbery and identified two men as having the same kind of coat and hat worn by the robbers. On seeing the two individuals, he stated, "I think it's him," and "I think that's the other man." Detective Hoffmeister testified that the clothing then worn by the two men was not the same clothing depicted in the videotape of the robbery. Although those two men were identified by the bank customer as having similar clothing to that described by the teller and branch manager, Detective Durcan testified that the police concluded that these two individuals were not involved and did not put their photos in the photo spread shown to McCullum, Reasoner, or the bank teller. Detective Durcan also testified that because the other two individuals "lived . . . there in the housing area," the police concluded "they had a reasonable explanation for being there."

The trial judge ruled that the circumstantial evidence was sufficient to prove the identity of Lowery as one of the robbers. Accordingly, the trial judge convicted him of robbery.

## II.

When the sufficiency of the evidence is challenged after a conviction, we review the evidence in the light most favorable to the Commonwealth and we grant to that evidence all reasonable inferences fairly deducible therefrom. *See Lassiter v. Commonwealth,* 16 Va.App. 605, 607, 431 S.E.2d 900, 901 (1993). When we so view the evidence, the issue whether

a criminal conviction is supported by evidence sufficient to prove guilt beyond a reasonable doubt is not a question of fact but one of law. *See Bridgeman v. Commonwealth,* 3 Va.App. 523, 528, 351 S.E.2d 598, 601–02 (1986). This conviction rests upon circumstantial evidence.

> [W]ell established principles apply to testing the sufficiency of circumstantial evidence. In *LaPrade v. Commonwealth,* 191 Va. 410, 418, 61 S.E.2d 313, 316 (1950), [the Supreme Court] summarized those principles as follows:
>
> "... [I]f the proof relied upon by the Commonwealth is wholly circumstantial, as it here is, then to establish guilt beyond a reasonable doubt all necessary circumstances proved must be consistent with guilt and inconsistent with innocence. They must overcome the presumption of innocence and exclude all reasonable conclusions inconsistent with that of guilt. To accomplish that, the chain of necessary circumstances must be unbroken and the evidence as a whole must satisfy the guarded judgment that both the corpus delicti and the criminal agency of the accused have been proved to the exclusion of any other rational hypothesis and to a moral certainty...."
>
> But, circumstances of suspicion, no matter how grave or strong, are not proof of guilt sufficient to support a verdict of guilty. The actual commission of the crime by the accused must be shown by evidence beyond a reasonable doubt to sustain his conviction.

*Clodfelter v. Commonwealth,* 218 Va. 619, 623, 238 S.E.2d 820, 822 (1977).

■ Applying these standards of review, we cannot say that under the circumstances of this case, the evidence was sufficient to prove beyond a reasonable doubt that Lowery was one of the robbers. No one could identify Lowery as the person in the bank who committed the robbery. No evidence proved that he was ever in possession of the stolen money. Furthermore, inconsistencies exist in the description of the robbers and the two men McCullum and Reasoner saw.

In the bank surveillance tape, the robber with the hooded sweatshirt appears to be carrying a white bag. Neither of the men that Reasoner or McCullum saw had a bag of any kind. Further, although the bank manager and teller described the robbers as wearing dark clothing, McCullum described the men he saw walking toward the black automobile as wearing tan pants. The bank manager said one of the robbers wore a black leather jacket; however, McCullum testified that the man he saw wore a brown leather or suede jacket.

This case is strikingly similar to *Cameron v. Commonwealth*, 211 Va. 108, 175 S.E.2d 275 (1970). In *Cameron*, a woman entered the lobby of a garage located at Sixth and Marshall Streets. She was grabbed by a man as she walked toward the elevator. *See id.* at 109, 175 S.E.2d at 275. After a second man wrestled the woman's purse away from her, the two men ran out of the garage through the Sixth Street exit. *See id.* A witness who was walking toward the garage saw two men run out of the Sixth Street exit and told the police that they were "two colored males, one short and one tall, the taller wearing dark pants, a white coat and a brown derby type hat, the smaller one wearing light pants, a brown coat and a white sailor type hat with the brim turned down." *Id.* at 109, 175 S.E.2d at 275–76.

Based on the witness' description, the police arrested Cameron and another man eight blocks from the garage. *See id.* at 109, 175 S.E.2d at 276. Cameron was wearing a " 'white, dirty, tan jacket,' gray pants and a brownish hat." *Id.* His companion "was wearing a brownish three-quarter-length coat, light tan pants and a 'dirty white sailor type cap pulled down with a red and gray band around it.' " *Id.*

The police took the witness to the police station and asked if he could identify the two men. *See id.* He was unable to do so until the officer had the men put on their hats and turn their backs to him. *See id.* at 109–10, 175 S.E.2d at 276. The witness testified at trial, however, that he could not be positive they were the same two men and only identified them by their clothing. *See id.* at 110, 175 S.E.2d at 276. At trial, the

victim was also unable to identify Cameron. *See id.* Although Cameron and his companion admitted being near the garage, they denied any involvement in the robbery. *See id.*

The Supreme Court reversed Cameron's conviction. In so doing, it held that "[c]onsidering the evidence against the defendant as a whole, while it may be said to raise a strong suspicion of guilt, it does not exclude every reasonable hypothesis of guilt." *Id.* at 111, 175 S.E.2d at 277. Therefore, the Court concluded that the evidence "does not establish his guilt beyond a reasonable doubt and ... is not sufficient to sustain his conviction." *Id.*

Although there are numerous comparisons between this case and *Cameron,* the evidence in this case is even less compelling. Neither of the witnesses who saw two men running near the bank saw the men exit the bank. Reasoner could only testify that he saw two men running from a point approximately thirty-five feet away from the bank exit. The men shown leaving the bank in the videotape were carrying a white bag of money; however, neither Reasoner nor McCullum saw either of the men carrying such a bag. Further, although McCullum identified Lowery, he saw Lowery two blocks away from the bank, not at or in the bank.

Moreover, McCullum's description of Lowery is inconsistent with the description of the robber given by the other witnesses. McCullum said Lowery was wearing a brown leather or suede jacket; the other witnesses described the perpetrator as wearing a black leather jacket. In addition, unlike the robber the witnesses described, Lowery had no hat, was wearing sunglasses, and "possibly had a mustache." Further, the police found none of the stolen money in the possession of Lowery or his companion. The only items found as a result of the police investigation were an ordinary gray wool cap and a leather jacket, both of which witnesses could only identify as being similar to items worn in the robbery. Most damaging to the Commonwealth's case, however, is evidence that the customer who was in the bank at the time of the robbery identified two other men as the robbers.

The Commonwealth's evidence merely proved Lowery wore clothing that was similar to clothing worn by one of the bank robbers and was in the vicinity of the bank about the time it was robbed. The evidence fails to prove, however, that Lowery was ever in the bank. The simple coincidences of wearing similar clothing and entering his automobile in the neighborhood of the bank do not provide proof beyond a reasonable doubt that Lowery was the actual robber. *See Corbett v. Commonwealth,* 210 Va. 304, 306–07, 171 S.E.2d 251, 253 (1969) (holding that the guilt of a party cannot be inferred because the facts are consistent with guilt, but they must be inconsistent with his innocence). No person in the bank identified Lowery as being one of the robbers. Moreover, the only person in the bank who was able to identify the robbers identified two other individuals.

For these reasons, we reverse Lowery's conviction.

*Reversed and dismissed.*