COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Fulton, Ortiz and Senior Judge Petty
Argued at Lexington, Virginia


JERMAINE DARELL CABELL, A/K/A
  JERMAINE DARNELL CABELL, A/K/A
  JERMAINE D. CAMELL
                                                    MEMORANDUM OPINION* BY
v.        Record No. 1397-21-3                      JUDGE JUNIUS P. FULTON, III
                                                    NOVEMBER 22, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Anne F. Reed, Judge

Jennifer T. Stanton, Senior Assistant Public Defender (Indigent
Defense Commission, on briefs), for appellant.

William K. Hamilton, Assistant Attorney General (Jason S. Miyares,
Attorney General; Liam A. Curry, Assistant Attorney General, on
brief), for appellee.


Jermaine Darell Cabell appeals his conviction, following a bench trial, of possession of

methamphetamine, in violation of Code § 18.2-250.  Cabell asserts that the Augusta County Circuit

Court ("trial court") erred in denying his motion to strike when it found the evidence sufficient to

prove that he knowingly and intelligently possessed methamphetamine.  For the following reasons,

we disagree, and affirm the conviction.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires that we "discard the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)).

On December 7, 2020, Virginia State Trooper Jason Cappo initiated a traffic stop of a vehicle for failing to maintain its lane. When Trooper Cappo approached the vehicle, he noticed the vehicle's registration was expired; Nicole Alexander was the driver, and Cabell was the front seat passenger. Because Cabell did not have his seat belt engaged, Trooper Cappo obtained his identifying information along with Alexander's.

Augusta County Sheriff's Deputy Gale testified that he responded to the stopped vehicle to assist Trooper Cappo. It was dark, and the vehicle was lit up by the lights from the police car. While Trooper Cappo spoke with Alexander, Deputy Gale spoke with Cabell. Deputy Gale observed that Cabell was "fidgety, moving, hands moving, [and] talkative." Deputy Gale further testified that while Cabell was still sitting in the front passenger's seat, Cabell was "maneuvering his hands in a way that [Gale] couldn't really see, so [Gale] had him step out of the vehicle."

After Trooper Cappo confirmed Cabell and Alexander's identities and learned that the vehicle was registered to neither Cabell nor Alexander, he returned to the vehicle and asked for Alexander's consent to search the vehicle. Cabell then interjected that he was the owner or potential purchaser of the vehicle. Cabell, however, could not provide any ownership documentation. Deputy Gale could not remember any direct statements Cabell made about ownership of the vehicle but did remember that Cabell was "in the process of purchasing the vehicle."

Alexander consented to the search, and Trooper Cappo began on the vehicle's passenger side. He found a "black zippered pouch on the passenger seat next to the center console," which contained a "broken glass pipe with residue and a blue and white pipe." "Directly next to the passenger seat on the floor near the door was a clear—small clear plastic baggie with white

- 2 -

residue." Trooper Cappo did not "have to look very hard to find [the plastic bag]" as "it was very apparent to [him]" when he began searching. Field testing confirmed that the white residue in the plastic bag was methamphetamine. In addition, several clear plastic tubes with white residue were on the passenger side floorboard and under the passenger seat.

When Trooper Cappo asked Cabell about the items found in the vehicle, he initially denied knowledge of the narcotics. Cabell was arrested and transported to the sheriff's office, where Trooper Cappo spoke with Cabell again and inquired about the plastic tubes' purpose. Cabell stated that the plastic tubes were used to change gears. Cabell also admitted that he had consumed methamphetamine four days earlier. Trooper Cappo acknowledged that Cabell was cooperative but observed that he was "defensive" and became "extremely hyper, [and] very emotional" when questioned about the items found.

After the conclusion of the Commonwealth's evidence, Cabell moved to strike, arguing that the Commonwealth failed to prove he knew the illicit drugs were in the vehicle. He asserted that his mere proximity to the drugs was insufficient. The trial court overruled the motion.

Cabell testified that he and his then girlfriend, Alexander, were moving into his cousin's home in Fishersville because they had been living in homeless shelters and staying with other relatives. They were traveling in Alexander's recently purchased vehicle when Trooper Cappo stopped them. The vehicle was difficult to drive because the gearshift was malfunctioning, and items had to be inserted into the gearbox to change gears. Cabell claimed that because he suffered from epileptic seizures, he was unable to drive. When Trooper Cappo asked him about the plastic tubes found in the vehicle, he thought the trooper was discussing the pen he had used to change the gears from neutral to park. He denied knowledge of the plastic bag Trooper Cappo recovered from the passenger side floorboard and stated that the day of the stop was the first time he had been in the vehicle. He asserted that in the weeks before, Alexander had allowed individuals she knew from the

shelter to sleep in the vehicle. Finally, Cabell insisted that he had told Trooper Cappo that Alexander was buying the vehicle, not him.

After the close of the evidence, Cabell incorporated a renewed motion to strike within his closing argument. He argued that his apparent statements about ownership are not dispositive because mere ownership of the vehicle is insufficient to establish that he knew about the drugs or constructively possessed them. And although he made statements regarding his recent methamphetamine use, his general knowledge of methamphetamine did not create an inference that he was aware of the plastic bag on December 7. The drugs, he argued, were not found in plain view because the bag was shoved between the door and the seat. It was dark when the stop occurred, and he did not see the bag before he entered the vehicle. Furthermore, there is no evidence that he was in the vehicle for a significant amount of time. Although there is evidence of other drug paraphernalia, that evidence was never tested, and it is unclear what type of residue was on those items. Consequently, he argued, the Commonwealth only established a suspicion of guilt.

The trial court disagreed and convicted Cabell of possession of methamphetamine. The trial court found that the drugs were located between the passenger seat and the door. Cabell had admitted to consuming methamphetamine before this incident and that he was emotional when talking about the items found. The court also found that Cabell's testimony at trial conflicted with "statements Trooper Cappo testified [Cabell] made at the time" of the stop. Cabell's prior statements indicated that he was purchasing the vehicle; Cabell's testimony at trial, however, was that he had no ownership in the vehicle. The court reasoned that this discrepancy was "telling." The court sentenced Cabell to two years of incarceration for possession of methamphetamine, with all but nine months suspended. This appeal followed.

STANDARD OF REVIEW

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

ANALYSIS

Cabell asserts that the trial court erred when it denied his motion to strike because the evidence was insufficient to prove that he knew of the presence, nature, and character of the methamphetamine or that it was subject to his dominion and control. He argues that he did not own the vehicle but was merely a first-time passenger and had not been in the vehicle for a significant amount of time. Even if he asserted ownership, however, that alone is insufficient to prove he exercised dominion and control over the methamphetamine. Indeed, he maintains that it would be irrational for him to claim ownership of the vehicle if he was aware of the presence of methamphetamine. He further contends that the drugs were not found in plain view and that he made no incriminating statements nor movements indicating he was aware of the presence of methamphetamine. Emphasizing the lack of forensic evidence, Cabell maintains that his mere

- 5 -

proximity to the drugs was insufficient to sustain his conviction. Thus, he concludes that the methamphetamine could have been left in the car by Alexander, the primary user of the vehicle, or an unknown person from the shelter who had recently slept in the vehicle.

"It is unlawful for any person knowingly or intentionally to possess a controlled substance." Code § 18.2-250. "In order to convict a person of illegal drug possession, the Commonwealth must prove beyond a reasonable doubt that the accused was aware of the presence and character of the drug and that the accused consciously possessed it." *Yerling v. Commonwealth*, 71 Va. App. 527, 532 (2020) (citing *Jones v. Commonwealth*, 17 Va. App. 527, 532 (1994)). Possession of contraband "may be actual or constructive." *Hall v. Commonwealth*, 69 Va. App. 437, 448 (2018). "[P]roof of actual possession is not required; proof of constructive possession will suffice." *Yerling*, 71 Va. App. at 532 (quoting *Walton v. Commonwealth*, 255 Va. 422, 426 (1998)). The Commonwealth can prove constructive possession by showing that there are "acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the substance and that it was subject to his dominion and control." *Id.* (alteration in original) (quoting *Drew v. Commonwealth*, 230 Va. 471, 473 (1986)). "Mere proximity to a controlled drug is not sufficient to establish dominion and control." *Id.* Additionally, although "ownership or occupancy alone is insufficient to prove knowing possession of [contraband] located on the premises or in a vehicle," circumstantial evidence coupled with ownership or occupancy often establishes the constructive possession of such contraband. *Burchette v. Commonwealth*, 15 Va. App. 432, 435 (1992). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Sarka v. Commonwealth*, 73 Va. App. 56, 67 (2021) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). "Ultimately, 'the issue [of what constitutes constructive possession] is largely a factual

one' left to the trier of fact, not the appellate court." *Bagley v. Commonwealth*, 73 Va. App. 1, 28 (2021) (alternation in original) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009)).

"Merely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence is a matter for the [factfinder] to decide." *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017) (alterations in original) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)). "By finding [a] defendant guilty, therefore, the factfinder 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'" *Id.* (alteration in original) (quoting *Haskins*, 44 Va. App. at 9). "While a factfinder may not arbitrarily disregard a reasonable doubt, whether 'the hypothesis of innocence is reasonable is itself a "question of fact," subject to deferential appellate review.'" *Burton v. Commonwealth*, 58 Va. App. 274, 285-86 (2011) (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 572 (2009) (*en banc*)).

Consistent with those principles, it is well-established that a defendant's immediate proximity to contraband that is plainly visible is sufficient to support a finding of constructive possession, even when others are present. In *Bolden v. Commonwealth*, 275 Va. 144, 149 (2008), for example, the Supreme Court concluded that a defendant constructively possessed "open and obvious" contraband that was "located in immediate proximity to where [the defendant] had been sitting." *See also Brown v. Commonwealth*, 5 Va. App. 489, 492-93 (1988) (holding that a defendant constructively possessed cocaine that was in "plain view" on a bed and "within arm's reach" of the defendant even though two other men were sitting on the bed on either side of the cocaine). Similarly, the Supreme Court has held that the driver of a "small"

- 7 -

vehicle constructively possessed a handgun that was in "plain view" on an "open console" between him and a front-seat passenger. *Smallwood*, 278 Va. at 628, 631-32.

Here, the evidence, viewed in the light most favorable to the Commonwealth, establishes that the methamphetamine was plainly visible "[d]irectly next to [Cabell's] seat on the floor." Although Cabell argues that the methamphetamine was not in plain view, Trooper Cappo testified that he did not "have to look very hard to find [the plastic bag]," as "it was very apparent to [him]" when he began his search. That testimony, viewed in the light most favorable to the Commonwealth, belies Cabell's argument. *See Hamilton v. Commonwealth*, 16 Va. App. 751, 754-55 (1993) (holding that the drugs found within the defendant's reach on the passenger side floorboard of a vehicle driven by the defendant were subject to her dominion and control). Moreover, a "black zippered pouch" containing suspected paraphernalia with white residue was *on Cabell's seat* near the center console. *See Wymer v. Commonwealth*, 12 Va. App. 294, 301 (1991) (holding that "[t]he bent straw with cocaine residue found in [the defendant's] purse along with the paraphernalia used to consume marijuana are sufficiently related to the items found in or on [the defendant's] dresser and are additional facts which permitted the fact finder to infer that appellant knew of the presence of cocaine").

In addition, Cabell's statements and actions provide further evidence that he was aware of the methamphetamine in the vehicle and exercised dominion and control over it. First, we have held that from a defendant's "admitted prior cocaine use and the location and visibility of the cocaine, [a] trial court could reasonably infer that [the defendant] was aware of the presence and character of the cocaine." *Brown*, 5 Va. App. at 492. Here, Cabell admitted that he had consumed methamphetamine four days prior, which is probative evidence that he was aware of the presence and character of the methamphetamine plainly visible next to his seat. Cabell was fidgety, talkative, and moving his hands. Further, Deputy Gale testified that he arrived at the scene after the stop by

Trooper Cappo. Gale testified that, while still in the front passenger's seat, Cabell was furtively moving his hands in a way that Deputy Gale could not see. Deputy Gale then had him step out of the vehicle. Trooper Cappo also testified that Cabell was "defensive" and became "extremely hyper, [and] very emotional" when questioned about the items found.

These furtive movements together with Cabell's defensive and emotional reaction and the presence of methamphetamine between the seat where Cabell was sitting and the door are sufficient to warrant a reasonable person to believe that Cabell was aware of the presence and character of the methamphetamine. *Copeland v. Commonwealth*, 42 Va. App. 424, 438, 440 (2004) (finding that the defendant's furtive movements along with the presence of cocaine in plain view and in proximity to the defendant supported the reasonable inference he was aware of the character and nature of the substance and its existence in the car).

Cabell suggests that the evidence failed to exclude the hypothesis that another person, such as an unknown person from the shelter, left the methamphetamine in the car. "While a factfinder may not arbitrarily disregard a reasonable doubt, whether 'the hypothesis of innocence is reasonable is itself a "question of fact," subject to deferential appellate review.'" *Burton*, 58 Va. App. at 285-86 (quoting *Clanton*, 53 Va. App. at 572).

It is well-established that, "in drawing inferences from the evidence, the fact finder may conclude . . . [that the] defendant['s] . . . false statements established that he has lied to conceal his guilt." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019). Once the fact finder concludes that the defendant's testimony is not credible, it may treat his "prevarications as 'affirmative evidence of guilt.'" *Sierra v. Commonwealth*, 59 Va. App. 770, 784 (2012) (quoting *Armstead v. Commonwealth*, 56 Va. App. 569, 581 (2010)). Moreover, in "cases involving possession of contraband, such an inference qualifies as evidence that tends to show that the defendant was aware of the contraband and that it was subject to his dominion and control." *Cordon v. Commonwealth*,

280 Va. 691, 695 (2010). Here, Cabell told Trooper Cappo during the incident that the car was his or that he was in the process of buying it. At trial, however, he claimed that Alexander owned the vehicle, he was merely a passenger, and that December 7 was the first time he had been in the vehicle. The trial court found Cabell's inconsistent statements to be the "most compelling" evidence of his guilty knowledge of the presence and character of the methamphetamine. Given the evidence at trial, the trial court was entitled to disbelieve Cabell's denials and assertion of innocence.

The dissent suggests that no reasonable trier of fact could have found beyond a reasonable doubt that Cabell was aware of and constructively possessed the black zippered pouch. The dissent also suggests that the clear plastic baggie was not in plain view and the record is not sufficient to attribute knowledge of this baggie to Cabell. The dissent further suggests that Cabell's statements are not inconsistent, and do not provide affirmative evidence of his guilt. Finally, the dissent suggests that Cabell's hand movements were not "furtive" as they are consistent with Cabell's testimony that he was shifting the car to park. These conclusions go beyond the appellate function by engaging in impermissible fact-finding. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith*, 296 Va. at 460 (alteration in original) (quoting *Perkins*, 295 Va. at 327). Our standard of review does not permit us to substitute our judgment of facts as determined by the trial court. Consequently, "[i]n such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret*, 296 Va. at 228 (second alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez*, 291 Va. at 248 (quoting *Williams*, 278 Va. at 193). "If there is evidentiary support for the conviction,

'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez*, 69 Va. App. at 161 (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)). For the reasons stated above, the trial court was entitled to find that Cabell was aware of the black zippered pouch and the plastic baggie. The trial court was entitled to infer that Cabell was aware of the presence and character of the drug paraphernalia found in the car from his admission that he had previously used methamphetamine. Finally, the trial court was entitled to find that Cabell's hand movements were not related to any attempt to engage the car's gearshift but were furtive and suspicious.

In sum, the above evidence could allow a reasonable fact finder to conclude that Cabell knowingly and intentionally possessed methamphetamine. Accordingly, we will not disturb the trial court's denial of the motion to strike on appeal.

CONCLUSION

The evidence at trial sufficiently proved Cabell possessed the methamphetamine found in the vehicle. The trial court's ruling was not plainly wrong or without evidence to support it. Accordingly, we affirm the conviction.

*Affirmed.*

- 11 -

Ortiz, J., dissenting.

I respectfully dissent from the Court's affirmance of Cabell's conviction. Even viewed in the light most favorable to the Commonwealth, I find the evidence insufficient to establish that Cabell *knowingly* possessed methamphetamine in violation of Code § 18.2-250.

Although we review the sufficiency of the evidence with a highly deferential standard, we must still examine whether any "rational trier of fact could have found the essential elements of the crime *beyond a reasonable doubt*." *Williams v. Commonwealth*, 278 Va. 190, 193 (2009) (emphasis added). "Circumstances of suspicion, no matter how grave or strong, are not proof of guilt sufficient to support a verdict of guilty." *Crisman v. Commonwealth*, 197 Va. 17, 21 (1955). "The guilt of a party is not to be inferred because the facts are consistent with his guilt, but they must be inconsistent with his innocence." *Camp v. Commonwealth*, 14 Va. App. 879, 884 (1992) (quoting *Cameron v. Commonwealth*, 211 Va. 108, 110-11 (1970)). While the majority cites evidence supporting the trial court's guilty finding, each piece of evidence is consistent with Cabell's innocence. The totality of the evidence establishes, at most, a mere suspicion of guilt.

### I. The methamphetamine was in proximity but not in plain view.

I agree with the majority that "mere proximity to a controlled drug is not sufficient to establish dominion and control." *Yerling v. Commonwealth*, 71 Va. App. 527, 532 (2020). I further agree that immediate proximity combined with plain view of the controlled drug would support a finding of constructive possession. Here, however, the drugs were not in plain view.

First, the suspected paraphernalia on Cabell's seat was found in an opaque "black zippered pouch." The paraphernalia was not visible without opening the pouch. Unlike in *Wymer v. Commonwealth*, 12 Va. App. 294 (1991), where a bent straw with cocaine residue was found in *the defendant's* purse, here, nothing in the record but mere proximity suggests that the

- 12 -

pouch belonged to Cabell.  Given the uncontested fact that Cabell did not own the car, no rational trier of fact could have found beyond a reasonable doubt that Cabell knew of the pouch, which was not his and was in a car that was not his, opened the pouch, and saw the suspected paraphernalia.

Second, the "small clear plastic baggie with white residue" found "[d]irectly next to the passenger seat on the floor near the door" was also not in plain view.  The uncontested evidence shows that it was nighttime and was "dark" except for "the lights from the police car" on the vehicle.  Although Trooper Cappo testified that he did not "have to look very hard to find" the baggie, he approached the passenger side with an intent to search the vehicle, not with an intent to be a mere passenger.  Finally, and most importantly, the baggie was not full of white powder.  Nor did it contain any pipes or other paraphernalia.  Rather, it was a small, empty bag with some residue.  It was not only less noticeable, but also much less valuable and more likely to have been left there by another person.  *See Brown v. Commonwealth*, 15 Va. App. 1, 9 (1992) (*en banc*) (finding that a factfinder could "infer from the value of drugs found on premises owned or occupied by an individual that it is unlikely anyone who is a transient would leave a thing of great value in a place not under his dominion and control").  No rational trier of fact could have found beyond a reasonable doubt that Cabell both noticed the small, empty plastic bag, that was not in plain view, and recognized a bit of residue as methamphetamine, while getting into the car at night.

Third, the "clear plastic pipes with white residue" on the passenger-side floorboard were not in plain view.  Trooper Cappo admitted as much when he stated that he did not find the pipes until he "actually looked underneath the seat."

In fact, the trial court did not conclude that the methamphetamine was in plain view.  In finding Cabell guilty, the trial court explicitly noted the location of the drug—"between the

passenger seat and the door"—but did not find it to be in plain view, which was understandable given the evidence. The trial court acknowledged that this case was a "difficult case" with "largely circumstantial" evidence and based its ruling primarily on Cabell's inconsistent statements regarding the ownership of the car, not on plain view. While we should not "substitute" our own factual findings for the trial court's findings, neither should we justify the trial court's conclusion with additional factual findings.

II. Cabell's statements regarding the ownership of the car are not affirmative evidence of his guilt.

Although the majority cites several cases for the proposition that a defendant's false statements can affirmatively show his guilt, in each of these cases, the defendant made a self-serving statement falsely denying the circumstances of a crime. In *Rams v. Commonwealth*, 70 Va. App. 12 (2019), a capital murder defendant lied about the temperature of the victim to suggest that a febrile seizure, rather than the defendant, killed the victim. In *Sierra v. Commonwealth*, 59 Va. App. 770, 784 (2012), a defendant attempted to defeat the knowledge element of a possession crime by falsely claiming that he "thought the pills were aspirin and Tylenol." In *Cordon v. Commonwealth*, 280 Va. 691 (2010), the defendant initially referred to a bedroom as "his" bedroom but later denied ownership upon learning that cocaine was found in the room. The Supreme Court found that even "assuming his denial gave rise to an inference that he was lying to conceal guilt and thus tended to show his knowledge and control of the cocaine, that inference along with the remaining evidence falls far short of" sufficiency to support his conviction. *Id.* at 696.

When a defendant makes a false statement on a collateral matter, without falsely denying the circumstances of a crime, the factfinder is not entitled to make the same inference. In *Clodfelter v. Commonwealth*, 218 Va. 619 (1977), the defendant was the sole occupant of a hotel room where drugs were found, and he gave a false identity when questioned by the police. The

Supreme Court found that although "this evidence creates a strong suspicion of guilt," it "falls short of showing beyond a reasonable doubt that the drugs found in the hotel room were ever actually or constructively possessed by Clodfelter with an awareness of their character." *Id.* at 623. Here, Cabell told Trooper Cappo that he was going to purchase the car. Nothing in the record suggests that Cabell in fact owned, was planning to purchase, or had ever ridden in the car, and Cabell later testified instead that his girlfriend was planning to purchase the car. Based on the record, to the extent that Cabell made a false statement, he falsely *claimed*, rather than *disclaimed*, his relationship with the car. This case is the opposite of *Sierra* or *Cordon*, where the defendant falsely *denied* knowledge or ownership of the drugs.

The trial court could certainly disbelieve or disregard Cabell's testimony that he did not own the car or the drugs, but absent affirmative evidence that he did own either, the trial court could not assume that he was lying and then infer that he knew about the drugs. *See White v. Commonwealth*, 68 Va. App. 111, 123 (2017) (finding in a child abuse and neglect case that although the "trial court was entitled to disbelieve or disregard" the defendant's testimony that she did not know the potential hazard, the Commonwealth "failed . . . to present evidence from which the trial court could infer [the defendant] did know"); *Payne v. Graves*, 32 Va. 561, 572 (1834) (rejecting a "process of assuming a first position, and then piling inference upon inference"). The trial court found "discrepancy" in Cabell's statements—and deemed it the "most compelling" evidence—without determining *which* of the statements were false. I do not question the trial court's finding of discrepancy but find the discrepancy insufficient to support the conviction.

### III. Cabell's statements regarding the plastic tubes are not affirmative evidence of his guilt.

The standard of review requires us to "discard" not all evidence of the accused, but any evidence "in conflict with that of the Commonwealth." *Commonwealth v. Cady*, 300 Va. 325,

329 (2021) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)). When "the facts are 'equally susceptible of two interpretations one of which is consistent with the innocence of the accused, [the trier of fact] cannot arbitrarily adopt that interpretation which incriminates [the accused].'" *Jay v. Commonwealth*, 275 Va. 510, 527 (2008) (alterations in original) (quoting *Burton v. Commonwealth*, 108 Va. 892, 899 (1908)). Here, Trooper Cappo testified that Cabell initially denied knowledge of the drugs and paraphernalia but later, when questioned about the plastic tubes, explained that he used them to change gears. Cabell testified that he misunderstood the question to be about the pen he used to replace the broken gearshift handle. Nothing in Trooper Cappo's testimony is "in conflict with" Cabell's explanation. In fact, Trooper Cappo confirmed that the gearshift seemed broken. Therefore, the trial court could not "arbitrarily adopt" an incriminating interpretation of Trooper Cappo's testimony when it is "equally susceptible of" another interpretation, consistent with Cabell's innocence.

IV. Cabell's hand movements in the car and reaction to questioning are consistent with his innocence.

The majority finds that Cabell's "furtive movements" and "defensive and emotional reaction" to questioning, combined with the methamphetamine found next to his seat, support a finding that Cabell knowingly possessed the methamphetamine. However, the record does not show that Cabell's hand movements were "furtive," and again, the trial court did not make such a finding. Neither the trial court nor the Commonwealth mentioned the word "furtive" during the trial. Deputy Gale testified only that Cabell was "maneuvering his hands in a way that [Deputy Gale] couldn't really see." This observation is consistent with Cabell's testimony that he was shifting the car to park with a broken gearshift. Furthermore, to the extent that Cabell's demeanor changed when questioned about the items, the reaction is also consistent with an innocent hypothesis that he was initially "cool, calm, and collected" because he had no knowledge of the drugs and became "very emotional" when questioned about them because he

was surprised. Therefore, Cabell's hand movements and demeanor do not support an inference of guilt.[1]

### V. Cabell's prior methamphetamine use has limited probative value.

Although the majority finds that Cabell's admitted methamphetamine use four days earlier is "probative evidence" of his knowledge of the drug, prior use is only relevant to prove Cabell's knowledge of the character—not *presence*—of methamphetamine. In my opinion, the majority gives undue weight to evidence of Cabell's prior drug use, without sufficient evidence that he actually saw the small, empty bag with residue.

Evidence of prior bad acts "'is incompetent and inadmissible for the purpose of showing' that the accused has a propensity to commit crimes or a particular crime and, therefore, to conclude that the accused probably committed the charged crime." *Jennings v. Commonwealth*, 20 Va. App. 9, 15 (1995) (quoting *Kirkpatrick v. Commonwealth*, 211 Va. at 269, 272 (1970)). In drug possession cases, a "narrow and specific" exception to this rule allows the factfinder to infer from prior drug possession "that an accused knows the *nature and character* of an illegal controlled substance." *Id.* at 16 (emphasis added). *See also Rider v. Commonwealth*, 8 Va. App. 595, 598-99 (allowing the Commonwealth to use prior drug sales to prove the defendant's "knowledge of the *nature* of the substance" (emphasis added)).

However, a drug possession conviction requires proof "beyond a reasonable doubt that the accused was aware of the presence *and* character of the drug and that the accused consciously

---

[1] Moreover, "[f]urtive gestures alone" are insufficient even "to establish probable cause." *Copeland v. Commonwealth*, 42 Va. App. 424, 434 (2004). While the majority relies on a combination of Cabell's "furtive movements," his "defensive and emotional reaction," and the presence of methamphetamine in proximity and plain view to infer knowledge, I disagree with the majority's findings that the methamphetamine was in plain view, *see supra* Part I, and that Cabell's reaction to questioning was suggestive of guilt. Thus, even assuming that Cabell's hand movements were "furtive," I would still find them far from sufficient to support an inference of knowledge beyond a reasonable doubt.

possessed it." *Yerling*, 71 Va. App. at 532 (emphasis added) (citing *Jones v. Commonwealth*, 17 Va. App. 527, 532 (1994)). People who have used or seen methamphetamine are more likely to recognize it *when they see it*, but they are no more likely to see it when it is not in plain view. Thus, reliance on evidence of prior drug use beyond the *character* prong of knowledge oversteps the "narrow" exception to the ban on propensity evidence.

In conclusion, the circumstances of this case, even in the light most favorable to the Commonwealth, establish no more than a mere suspicion of guilt. Because I find that the evidence falls far short of sufficient to support a guilty finding beyond a reasonable doubt, I dissent.